ShaceeleoRD J.,
delivered the opinion of the Court.
This is an indictment against the plaintiff in error, for an assault with intent to kill. He was tried before a jury of Macon County, found guilty, and sentenced to serve three years in the penitentiary. A new trial was moved for, and was overruled; from which an appeal was taken to this Court. The facts necessary to be stated, for an understanding of the principles involved, are: The plaintiff in error, in 1864, with several others, on the night of the 11th of November, went to the house of the prosecutor, and a difficulty ensued. The prosecutor shot and wounded one of the party, (King,) of which wound he died the nest day. The plaintiff in error struck the prosecutor, knocking him down, and fracturing his skull. The plaintiff in error, with several others, were at the house of the prosecutor on the Sunday previous, when angry words ensued, and threats were made by the plaintiff in error.
Joseph King and G. W. .Meadows were jointly indicted with the plaintiff in error, tried at a previous term of the Court, and acquitted. When the case was called, the plaintiff in error moved the Court for a change of venue; and, in support cf the motion, filed his affidavit, ánd that of two others; the substance of which was, that he could not have a fair *357 and impartial trial of tbe cause in the county, in consequence of tbe prejudice against him; the other two defendants having been tried in the county, and acquitted, for the same offense; tliat.an impartial jury could not be selected.
The motion was overruled, to which the defendant excepted. The first question presented, is: Did the Court err in refusing to change the venue? By the Act of 1827, ghap. 30, all laws authorizing a change of venue in criminal cases, were repealed. Before the passage of this Act, a change of venue was had, upon the application of the prisoner, if there was a prejudice against him.
The Act of 1827 introduced a new policy. It took away from the prisoner all right to a change of venue, on his application, and vested the power in the Circuit Judge, when a fair and impartial trial, could not be had, and that could only be determined after an attempt to impanel a jury. Section 5195 of the Code, has relaxed the rule to some extent. It provides, upon the application of the defendant in a felony case, if it is made to appear satisfactory to the Court, that, from undue excitement against a prisoner in the county where an offense is committed, or any other cause, a fair and impartial trial cannot probably be had; or when the Court, in any criminal case, upon an attempt to impanel a jury for the trial of the cause, is of opinion that a fair .and impartial trial cannot be had in the county where the cause is pending, the venue shall be changed to the nearest county in, or without, the judicial circuit, in which the prosecution *358 is pending, where the same canses do not exist. By this provision of the Code, the rigid rule prescribed by the Act of 1827, was relaxed. A sound legal discretion was vested in the Circuit Judge. He must be satisfied, from the facts presented, the prisoner cannot have a fair and impartial trial in the county.
The record in this case, does not disclose such a state of facts, that would authorize this Court to reverse the action of the Circuit Court. It is silent as to the number of jurors who were summoned; and, from what appears in this record, an impartial jury was obtained without difficulty. The affidavit of the plaintiff in error, and the accompanying affidavits, do not disclose a state of facts, that would authorize the Court to say the Judge erred in refusing the application; and in his refusal we think there was no error.
2. On the trial of the cause, the plaintiff in error offered to introduce as evidence, the dying declarations of King, who was mortally wounded on the night of the assault, and died the next day. They were made under the full belief of impending dissolution. King, in his dying declaration, gave a detailed statement of the affray, the effect of which was to exonerate the plaintiff in error from all criminal intent, The proof was objected to by the counsel of the State, and the objection sustained by the Court, to which the plaintiff in error excepted.
The question presented, is: Did the Court err in rejecting the testimony? Dying declarations are made in extremis, when the party is at the point of death, when every hope of this world is gone, when every incentive *359 to falsehood is silenced, and the mind is induced by the most powerful considerations, to speak the truth; and is considered, in law, as creating an obligation as great as that created by an oath; and in prosecutions for murder, it is the common practice to admit as evidence, the dying declaration of the person, with whose murder the prisoner stands charged.
There has been some conflict in the decisions of the Courts, on the question as to the admissibility of dying declarations in cases other than murder. But the rule is now settled, by a series of cases, that declarations m extremis, are restricted to the trial of the identical homicide of the person who make the declaration: 1 Phillips on Evidence, 286, and note 99. They were not admitted on a trial for robbery, though the party died from violence used against him in its commission: Rex vs. Lard, 4 Carrington & Payne, 233; 1 New Jersey Reports, 196.
In 3 Greenleaf on Evidence, 250, the principle is stated: “On a trial of a prisoner for robbery, the dying declarations of the person robbed, are not admitted against the prisoner; such evidence, though sometimes received, being now held admissible only in the charge of the murder of the declarant.” We indorse and approve the principle, and think that it is against sound policy to extend the rule to cases where the prisoner is not on trial on the charge of murder of the declarant, and that it was no error of the Court in rejecting the testimony.
3. On the trial of the cause, the Court permitted evidence to go to the jury, connecting the plaintiff in *360 error with a hand of men, known as “Miles’ men;” that they were irregular soldiers, and marauders, committing robberies, taking horses and mules, etc., etc.; that Sam. Hudson,' a brother of the plaintiff in error, was a Lieutenant in that band. There is no proof, showing that plaintiff in error was associated with the band, while his brother was a Lieutenant in that band. The Court also permitted the prosecutor to prove, that he was informed, a few days before the affray, that the son of Robert Newton told him, that Sam; Hudson had been sent for by the plaintiff in error, to attack him, the prosecutor. This testimony was objected to by the plaintiff in error. The objection was overruled, and the evidence permitted to go to the jury.
No principle of criminal law is now more clearly settled., than that evidence that does not tend to elucidate the issue, will not be received. The fact, that “Miles’ men” were a band of robbers, had no connection with the commission of the offense by the plaintiff in error. Though the brother of the plaintiff in error, Sam. Hudson, was present on the night of the difficulty, and was a Lieutenant in “Miles’ band,” did not, in any way, tend to prove the guilt or innocence of the plaintiff in error.
That they were robbers, and men of desperate character, we can well see the prejudicial effects of such testimony, against the plaintiff in error. The brother, Sam. Hudson, being one of that band, and present, cannot affect the rights of the plaintiff in error, or authorize the admission of the character of that band *361 of men; and could not tend to prove the guilt or innocence of the plaintiff in error.
The effect of the testimony was, to prejudice the jury against the plaintiff in error. The testimony, taken in connection with the statements of the prosecutor, that Robert Newton’s son had told him, that the plaintiff had sent for Sam. Hudson to attack him, must have had a prejudicial influence against the plaintiff in error, with the jury, and was clearly inadmissible.
It is a settled principle, that no evidence can he admissible, which does not tend to prove or disprove the issue joined: Russell on Crimes, vol. 2, 772. The necessity for enforcing this rule, is much stronger in criminal, than in civil cases. The evidence must be confined to the points in issue. The facts proved must be strictly relevant to the particular charge, and have no reference to any conduct of the prisoner, disconnected with said charge: 1 Russell on Crime, 839; Roscoe’s Criminal Evidence, 80.
The statement of the prosecutor, that a son of Robert Newton had told him, the plaintiff in error had sent for his brother to attack him, is, upon the plainest principles of law, incompetent testimony, and falls within the rule of hear-say evidence. The son of Robert Newton was a competent witness, and should have been introduced. His declarations were not evidence: Roscoe’s Criminal Evidence, 22.
No particular exceptions were taken to the charge of the Court in the cause.
*362 The evidence is voluminous and very conflicting; and as the case will undergo another investigation before a jury, we forbear any comment on the facts. Other questions have been presented in the argument, which, in the view we have taken of the case, it is unnecessary now to determine.
The judgment must be reversed, and a new trial awarded.